UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL ANTHONY DAVIS, #514719,

                Petitioner,

                                      CASE NO. 10-CV-11240

v.

                                      HON. MARK A. GOLDSMITH

NICK LUDWICK,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.      INTRODUCTION

This is a habeas case brought pursuant to 28 U.S.C. § 2254.   Following a 2004 jury trial in the Wayne County Circuit Court, Michigan prisoner Paul Anthony Davis ("Petitioner") was convicted of first-degree murder under Mich. Comp. Laws § 750.316 and possession of a firearm during the commission of a felony under Mich. Comp. Laws § 750.227b.   Trial Tr., 10/19/04, at 10-11 (Dkt. 9-8).   Petitioner was sentenced to life imprisonment without the possibility of parole and two years additional imprisonment.   Sentencing Tr. at 4-5 (Dkt. 9-9).   In his pleadings, Petitioner raises claims concerning the jury voir dire, his competency, the pre-trial identification procedures, the conduct of the prosecutor, the sufficiency of the evidence, cumulative error, and the effectiveness of trial and appellate counsel.   For the reasons set forth, the Court denies the petition for a writ of habeas corpus.   The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.   BACKGROUND

Petitioner's convictions arise from the shooting death of Larry Snipes, Jr. during an argument at a residence on Spokane Street in Detroit, Michigan on May 12, 2004.   At trial, three witnesses, Troynesha Henry, age 13, Dana Henry, age 12, and Semaal Henry, age 16, identified Petitioner as the perpetrator.   Trial Tr., 10/13/04, at 28, 104, 158 (Dkt. 9-5). The Court adopts the following excerpt from Petitioner's statement of facts; this excerpt is consistent with the record. Those facts are as follows:

> Several eyewitnesses, all of whom lived at the scene and were in different locations throughout the house at the time of the shooting, testified that the events which gave rise to this cause of action occurred in the early morning hours of May 12, 2004, at their home on Spokane Street in the city of Detroit.   (T. vol II, 10-13, 17, 75, 101, 130, 144-146). That a person nicknamed "Pee", who three of the witnesses identified as Petitioner "Davis" . . . had been seen about the neighborhood earlier that day. (T.vol II, 13-15, 69-72, 74, 83, 89-92, 147-148).

> It was further stated by the witnesses that "Pee", the victim, a person nicknamed "Chocolate", who was armed with a handgun, and others had gathered in the backyard of the house.   That one of the several dogs that were kept in the area was shot by "Pee". (T.vol II, 35-36, 84-86, 99, 155). Also, that sometime after 2:00 am, "Pee" and the victim, both of whom had been drinking, were in the living room of the house where "Pee" pulled out a handgun from his waistband and placed it atop the mantel inside the location in the home where the incident took place.

> No one saw the victim with a weapon at this time. (T.vol II, 21, 37, 66, 73, 78, 100, 159). Additionally, it was said that the two men had been arguing back and forth over a bet for money which had been made on the number of pushups that could be done. (T.vol II 16-19, 76-77, 95, 102-104, 156-158). Eventually this argument escalated during which time "Pee" retrieved his gun from the mantel and then turned to those present and stated "you don't know me, you never seen me." (T.vol II, 22-26, 80, 104, 158).

> After making his statement "Pee" then shot the victim two times, or as many as six to seven times, there was some discrepancy between the witnesses' testimony on how many shots [were] fired.   Those witnesses who did not see the actual shooting testified that several shots were heard during the argument.   It was said that after the victim had fallen "Pee" exited the house and left in the vehicle he arrived in. (T.vol II, 26-30, 80-82, 104-105, 159-162). Thereafter all of the occupants of the house left the scene. (T.vol II, 31, 38, 107, 163).

2

Detroit police officers testified that when they responded to the scene they found the victim laying by the fireplace in the living room. (T.vol II, 178-184). That they observed bloodstains in the area of the body as well as recovering two spent shell casings from living room.  That while a sketch was prepared, reports made, and photographs taken, nothing in the house was dusted for prints by any homicide detectives nor evidence [technicians]. (T.vol II, 186-192).
. . . .
An assistant medical examiner testified that the victim suffered bullet wounds in three locations (right rear shoulder, left forearm, and left abdomen) . . . . That the wound to the right rear shoulder exhibited evidence of close range firing . . . . Death was classified as a homicide by multiple gunshots. (T.vol II, 5-19)

A witness for Petitioner testified that he had been at her house in Taylor, Michigan the whole day and night in question. (T.vol III, 93-94). That she remembers that specific day each year because it is not only her cousin's birthday and also the anniversary of the day she was shot by someone in 1991. (T.vol III, 90-92, 98).

Pet. Br. at1-3 (Dkt. 1 at 38-40 (CMECF pagination)).

At the close of trial, the jury convicted Petitioner of first-degree murder and possession of a firearm in the commission of a felony.   Trial Tr., 10/19/04, at 10-11 (Dkt. 9-8).   The trial court subsequently sentenced him to consecutive terms of life imprisonment and two years imprisonment on those convictions.   Sentencing Tr. at 4-5 (Dkt. 9-9).

Following sentencing, Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals raising a jury instruction claim.   The court denied relief and affirmed Petitioner's convictions.   People v. Davis, No. 259463, 2006 WL 1360441 (Mich. Ct. App. May 18, 2006) (unpublished).   Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claim as well as an ineffective assistance of trial counsel claim. The court denied leave to appeal in a standard order.   People v. Davis, 722 N.W.2d 873 (Mich. 2006).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising the following claims:

I.      The trial court's admonishment of prospective juror Daniel Shannon for voicing his personal bias, and the court's hostile attitude towards the transportation difficulties of prospective juror Negwa Hussein undermined the effectiveness of voir dire and violated [Petitioner's] right to a fair trial and impartial jury.

II.     [Petitioner] must be granted a new trial if it is determined that his right to due process not to stand trial while incompetent was violated if a "retrospective" competency hearing cannot be conducted at this time, then [Petitioner] is entitled to a new trial.

III.    [Petitioner] was denied due process of law where [he] was convicted on the basis of an unnecessarily suggestive in-court identification procedure which was conducive of misidentification.

IV.     [Petitioner] was denied due process of law and a fair trial when the prosecutor vouched for the credibility of its own witness, and denigrated the defense.

V.      [Petitioner] was denied a fair trial and his constitutional right to the effective assistance of counsel when defense counsel failed to move for a competency hearing: by his attorney's failure to request an in-court line-up pursuant to People v. Maire, and for the appointment of an expert on eyewitness identification; and in failing to object to improper prosecutorial comments.

VI.     [Petitioner] was denied his constitutional right to a fair trial due to the cumulative effect of the prejudicial errors which occurred during the course of his trial.

VII.    [Petitioner] was denied his constitutional right to the effective assistance of counsel on direct appeal when appellate counsel failed to challenge issues that were both "obvious and significant" for no apparent strategic reason.

Mot. for Relief from Judgment at 3-4 (Dkt. 9-10).

The trial court denied the motion, finding that trial and appellate counsel provided adequate representation and ruling that Petitioner had not established cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions.   People v. Davis, No. 04-006941-01 (Wayne Co. Cir. Ct. Oct. 3, 2007) (Dkt. 9-11). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was

4

denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Davis, No. 288056 (Mich. Ct. App. March 27, 2009) (unpublished).  The court also denied Petitioner's requests for remand and for reconsideration.  (Dkt. 9-14.)  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied for failure "to meet the burden of establishing entitlement to relief under MCR 6. 508(D)." People v. Davis, 773 N.W.2d 680 (2009).   The court denied Petitioner's request for reconsideration.   People v. Davis, 485 Mich. 1073, 777 N.W.2d 151 (2010).

Petitioner thereafter instituted this federal habeas action, raising the following claims:

I.     The trial court's admonishment of prospective juror Daniel Shannon for voicing his personal bias, and where the court's hostile attitude towards the transportation difficulties of prospective juror Negwa Hussein undermined the effectiveness of the voir dire, and violated Petitioner's right to a fair trial and impartial jury.

II.    He must be granted a new trial where his due process not to stand trial while incompetent was violated. If a "retrospective" competency hearing cannot be conducted at this time, then he is entitled to a new trial.

III.   He was denied due process of law where he was convicted on the basis of an unnecessarily suggestive in-court identification procedure which was conducive of misidentification, and he was denied the right to counsel when a photographic lineup was conducted while Petitioner was in police custody.

IV.    He was denied due process of law and a fair trial when the prosecutor vouched for the credibility of its own witness, denigrated the defense, used hearsay as substantive evidence of guilt violating his right to confrontation, and argued facts not in evidence to obtain a conviction.

V.     He was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel when defense counsel failed to move for a competency hearing, failed to request an in-court line-up, failed to appoint an expert on eyewitness identification, failed to object to improper prosecutorial comments, failed to present credible alibi witnesses, failed to suppress the identification made by the prosecution's key witnesses, failed to impeach witness Dana Henry, failed to investigate and interview several known res gestae witnesses, and counsel was also equally ineffective for

5

failing to object to the trial court's failure to instruct on the use of witnesses prior inconsistent statements.

VI.     His Fifth and Fourteenth Amendment rights to due process were violated where he was convicted of first-degree premeditated murder without sufficient evidence of premeditation or deliberation.

VII.    He was denied his constitutional right to a fair trial due to the cumulative effect of the prejudicial errors which occurred during the course of his trial.

VIII.   He was denied his constitutional right to the effective assistance of counsel on direct appeal when appellate counsel failed to challenge issues that were both "obvious and significant" for no apparent strategic reason. His actual innocence of the crimes charged/convicted excuses any procedural default of the claims raised herein.

IX.     An evidentiary hearing should be granted.

X.      The claims are procedurally proper for this court to review, because Petitioner showed good cause and actual prejudice.

Petition for Habeas Corpus at 2-23 (Dkt. 1).  Respondent has filed an answer to the petition, contending that it should be denied because certain claims are unexhausted and all of the claims are barred by procedural default.  (Dkt. 8.)  Petitioner has filed a reply to that answer. (Dkt. 12.)

## III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 et seq., governs this case because Petitioner filed his petition after the AEDPA's effective date.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997).  The AEDPA provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable

6

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010) (citations and quotation marks omitted).

The Supreme Court recently held that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citation and quotation marks omitted). The Supreme Court emphasized "that even a

strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. Thus, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at  786-787.

Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." Harrington, 131 S. Ct. at 784-785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original). While the requirements of clearly established law are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. See Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citations omitted).

A state court's factual determinations are presumed correct on federal habeas review.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

8

# IV.    ANALYSIS

## A.    Claims Barred by Exhaustion and Procedural Default

Respondent contends that portions of Petitioner's third, fourth, and fifth habeas claims and his sixth habeas claim are unexhausted because Petitioner never raised them in the state courts on direct appeal or collateral review.   Resp. Br. at 9 (Dkt. 8).   Respondent further argues that those claims are now barred by procedural default because Petitioner no longer has a state court remedy available to exhaust those claims.   Id. at 9-10.

A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies.   See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").   Each issue must be properly raised before both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement.   See Welch v. Burke, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999) (citing Dombkowski v. Johnson, 488 F.2d 68, 70 (6th Cir. 1973)); see also Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990).   The claims must also be "fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual and legal bases for the claims in the state courts.   McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000).   The burden is on the petitioner to prove exhaustion.   Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

The record shows that Petitioner did not exhaust the following issues on direct appeal or in his post-conviction proceedings:   (1) the portion of his third habeas claim alleging that he was denied the right to counsel when an in-custody photographic lineup was conducted, (2) the portion of his fourth habeas claim alleging that the prosecutor improperly used hearsay evidence as substantive evidence of guilt and argued facts not in evidence, (3) the portion of his fifth habeas

9

claim alleging that trial counsel was ineffective for failing to present credible alibi witnesses, for failing to seek suppression of witness identifications, failing to impeach a witness, failing to investigate witnesses, and failing to object to the jury instructions, and (4) his sixth habeas claim challenging the sufficiency of the evidence.   These issues were not raised in Petitioner's direct appeal of right or in his application to appeal from the trial court's denial of his motion for relief from judgment.

Petitioner, however, no longer has an available state court remedy by which to further exhaust the claims.   Pursuant to Michigan Court Rule 6.502(G)(1), a criminal defendant in Michigan is generally permitted to only file one post-conviction motion for relief from judgment. See Gadomski v. Renico, 258 F. App'x 781, 783 (6th Cir. 2007).   Consequently, Petitioner's claims are now defaulted.   When a habeas petitioner fails to properly present claims to the state courts and is barred from pursuing further relief under state law, he has procedurally defaulted his claims for purposes of federal habeas review.   See Pudelski v. Wilson, 576 F.3d 595, 605 (6th Cir. 2009) (citation omitted).

A state prisoner who fails to comply with a state's procedural rules, and whose claims are therefore procedurally defaulted, waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.   Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Nields v. Bradshaw, 482 F.3d 442, 450 (6th Cir. 2007).

In this case, Petitioner has failed to allege or establish cause to excuse this procedural default.   Petitioner argues that "'Cause' for not raising these issues on direct appeal is demonstrated by ineffective assistance of appellate counsel," Petition at 23; however, the fact that appellate counsel did not raise the claims on direct appeal is immaterial because Petitioner could

have still properly exhausted the claims in his state post-conviction motion for relief from judgment and related appeals.   See Moon v. Trombley, No. 07-13754, 2010 WL 2376168, at *4 (E.D. Mich. June 9, 2010) (citing Carpenter v. Vaughn, 888 F. Supp. 635, 654 (M.D. Pa. 1994)). A prisoner's pro se status or lack of knowledge about state court rules does not constitute cause to excuse a procedural default.   Hannah v. Conley, 49 F.3d 1193, 1197 (6th Cir. 1995).   The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.   See Smith v. Murray, 477 U.S. 527, 533 (1986).

Petitioner has also not demonstrated that a fundamental miscarriage of justice has occurred.   The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.   Murray v. Carrier, 477 U.S. 478, 496 (1986).   To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995).   Moreover, actual innocence means "factual innocence, not mere legal insufficiency."   Bousley v. United States, 523 U.S. 614, 623 (1998) (citation omitted).   Petitioner has made no such showing of new reliable evidence.   His conclusory allegations of innocence are insufficient.   The aforementioned claims are thus barred by procedural default and do not warrant federal habeas relief.

**B.     Claims Barred by Procedural Default**

Respondent contends that Petitioner's remaining claims are barred by procedural default because he first raised the issues in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D)(3).   Resp. Br. at 11.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.   See Wainwright v. Sykes, 433 U.S. 72,

85-87 (1977).   The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, the procedural rule is "adequate and independent," and the petitioner does not establish cause and prejudice for failing to follow the procedural rule.   White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006).   The last explained state court judgment should be used to make this determination.   See Ylst v. Nunnemaker, 501 U.S. 797, 803-05 (1991).   If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.   Id. at 804.

Petitioner first presented his jury voir dire claim; his competency claim; his suggestive identification claim; his prosecutorial vouching and denigration claim; his ineffective assistance of trial counsel claim concerning the failure to seek a competency hearing, to request an in-court lineup, to request an identification expert, and to object to prosecutorial misconduct; and cumulative error to the state courts in his motion for relief from judgment.[1]   See Motion for Relief from Judgment (Dkt. 9-10).   The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.   See Mich. Ct. R. 6.508(D)(3).   In denying relief, the Michigan Supreme Court used a form order[2] that the Sixth Circuit later held is

---

[1]Petitioner also first raised his ineffective assistance of appellate counsel claim in his motion for relief from judgment.   That claim, however, is not barred by procedural default, as post-conviction collateral review was the first opportunity Petitioner had to fully exhaust that issue.   See, e.g., Tucker v. Renico, 317 F. Supp. 2d 766, 773 (E.D. Mich. 2004).

[2] The form order used here states: "On order of the Court, the application for leave to appeal the

unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.   See Guilmette v. Howes, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).   Consequently, under Guilmette, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions.   Order Denying Motion for Relief from Judgment (Dkt. 9-11).   The state court thus clearly relied upon a procedural default to deny Petitioner relief on his claims.   Accordingly, Petitioner's remaining claims, other than his ineffective assistance of appellate counsel claim, are procedurally defaulted.

As noted above, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.   Coleman, 501 U.S. at 750-51; Gravley, 87 F.3d at 784-85.

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. Petition at 23.   In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).   In determining whether counsel's performance was deficient,

[t]he court must . . . determine whether, in light of all the circumstances, the

March 27, 2009 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." People v. Davis, 773 N.W.2d 680 (Mich. 2009).

> identified acts or omissions were outside the wide range of professionally
> competent assistance . . . . At the same time, the court should recognize that
> counsel is strongly presumed to have rendered adequate assistance and made all
> significant decisions in the exercise of reasonable professional judgment.

Id. at 690.   Judicial scrutiny of counsel's performance is thus "highly deferential."   Id. at 689.

To demonstrate prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 694.

It is established that a criminal defendant does not have a constitutional right to have

appellate counsel raise every non-frivolous issue on appeal.   See Jones v. Barnes, 463 U.S. 745,

751-752 (1983).   The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in
> the Constitution or our interpretation of that document requires such a standard.

Id. at 754.   Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel."   United States v. Perry, 908 F.2d

56, 59 (6th Cir. 1990).   In fact, "the hallmark of effective appellate advocacy" is the "process of

'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."   See

Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Barnes, 463 U.S. at 751-52).   "Generally,

only when ignored issues are clearly stronger than those presented will the presumption of

effective assistance of appellate counsel be overcome."   Monzo v. Edwards, 281 F.3d 568, 579

(6th Cir. 2002) (citation and quotation marks omitted).   Appellate counsel may deliver deficient

performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue

which was obvious from the trial record and would have resulted in reversal on appeal.   See

Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.   None of the claims is a "dead-bang winner," particularly in light of the eyewitness testimony establishing Petitioner's guilt presented at trial.   Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct (or demonstrate prejudice to excuse this procedural default) because the defaulted claims lack merit for the reasons stated below.

Lastly, as discussed above, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred.   These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### C.       Merits of Defaulted Claims

#### 1.       Jury Voir Dire Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court violated his rights during jury voir dire by "admonishing" prospective juror Daniel Shannon for expressing possible bias and by exhibiting a "hostile attitude" toward prospective juror Negwa Hussein due to her transportation difficulties.   Petition at 2.   Both jurors were excused at the prosecutor's request and did not serve on the jury.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to an impartial jury.   See U.S. Const. Amend. VI, XIV; Turner v. Louisiana, 379 U.S. 466, 471 (1965).   Jury voir dire "is designed to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors."   Dennis v. Mitchell, 354 F.3d 511, 520 (6th Cir. 2003).   "No hard-and-fast formula dictates the necessary depth or breadth of voir dire."   Skilling v. United States, _ U.S. _, 130 S. Ct. 2896, 2917 (2010)

15

(citation omitted).   Supervision of voir dire is generally left to the "sound discretion" of the trial court.   Ristaino v. Ross, 424 U.S. 589, 594 (1976) (citations omitted).   The exercise of the trial court's discretion is "subject to the essential demands of fairness."   Aldridge v. United States, 283 U.S. 308, 310 (1931).   "[T]he Constitution requires only that voir dire be conducted in a manner which ensures fundamental fairness."   Dennis, 354 F.3d at 524.

The record in this case reveals that the trial court's comments to the prospective jurors were appropriate and part of an overall attempt to seat a fair and impartial jury.   When Mr. Shannon informed the trial court that someone had shot his dog with an arrow and he might be a biased as a result, the court questioned him about his ability to set aside that experience and decide the case based upon the evidence.   See Trial Tr., 10/12/04, at 12-14.   The court's comments were entirely appropriate.   When Ms. Hussein expressed concern about child care and transportation limitations, the trial court merely stated that she might be able to obtain a ride from another juror.   Id. at pp. 14-15.   Again, this comment was not improper.   Moreover, both jurors were ultimately excused.

While Petitioner claims that the trial court's comments made the remaining jurors less willing to reveal their own biases or problems, he has not shown that such was the case.   Rather, the record reveals that many prospective jurors subsequently discussed their potential biases and difficulties with jury service.   Additionally, Petitioner has presented no evidence to show that the seated jury was prejudiced against him.   Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.   Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); see also Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) ("bald assertions and conclusory allegations" do not provide a basis for an evidentiary hearing on habeas review).   In sum,

Petitioner has failed to establish that the trial court erred or that his constitutional rights were violated during jury voir dire.   Habeas relief is not warranted on this claim.

### 2.    Competency Claim

Petitioner next asserts that he is entitled to habeas relief because he was incompetent to stand trial and the trial court failed to conduct a competency hearing.   Petition at 2.   Petitioner states that he had mental health issues and was receiving treatment at the time of trial.   Id.

It is established as a matter of federal constitutional law that a criminal defendant may not be tried unless he is mentally competent.   Indiana v. Edwards, 554 U.S. 164, 169-70 (2008).   The standard for competence to stand trial is whether the defendant has (1) sufficient present ability to consult with a lawyer and (2) a rational and factual understanding of the proceedings against him.   Godinez v. Moran, 509 U.S. 389, 396 (1993) (citations omitted).   Due process is violated by a trial court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency.   Pate v. Robinson, 383 U.S. 375, 385-86 (1966); Mackey v. Dutton, 217 F.3d 399, 411 (6th Cir. 2000).   The question for a reviewing court in such a case is whether a reasonable judge, situated as was the trial court judge, should have experienced a "bona fide doubt" about the defendant's competency.   See Warren v. Lewis, 365 F.3d 529, 533 (6th Cir. 2004) (citing Drope v. Missouri, 420 U.S. 162, 173 (1975)).

Having reviewed the record, the Court concludes that a reasonable judge sitting in the trial court's place would not have experienced a bona fide doubt as to Petitioner's competency at the time of trial.   While Petitioner may have had some mental health issues and/or was taking medication at some point, the record is devoid of evidence that he was unable to consult with defense counsel or have a proper understanding of the criminal proceedings.   See, e.g., United States v. Pope, 146 F. App'x 536. 539 (2d Cir. 2005) (denying relief on direct appeal where

17

defendant failed to show that panic disorder and depression impeded ability to enter plea).   To the contrary, the record in this case reveals that Petitioner consulted with counsel before trial and participated in his defense.   Neither the prosecutor nor defense counsel expressed concerns about Petitioner's mental health at the time of trial.   While Petitioner interrupted the prosecutor's closing argument with protestations of his innocence, there is no indication that he did so due to mental incompetency rather than out of anger or frustration.   Trial Tr., 10/18/04, at 28 (Dkt. 9-7). After being removed from the courtroom, Petitioner met with counsel, apologized to the court, and was allowed to remain in court for the remainder of trial.   Given such circumstances, Petitioner has not established that the trial court violated his constitutional rights by failing to sua sponte inquire into his competency.

Furthermore, Petitioner has not presented sufficient facts to create a real and substantial doubt as to his competency so as to warrant an evidentiary hearing, see Thirkield v. Pitcher, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002) (collecting cases); see also Whittaker v. McDaniel, 268 F. App'x 594, 596-97 (9th Cir. 2008) (denying evidentiary hearing where habeas petitioner alleged he was taking medications, but made no specific allegations and offered no evidence explaining how his medication affected his ability to consult with counsel or understand the proceedings), or other relief from this Court.   He has offered no evidence to show that any mental health condition or treatment affected his ability to sufficiently comprehend and participate in his criminal proceedings.   Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.   Prince v. Straub, 78 F. App'x 440, 442 (6th Cir. 2003).   Nor do conclusory allegations provide a basis for an evidentiary hearing on federal habeas review.   Washington, 455 F.3d at 733.   Habeas relief is not warranted on this claim.

### 3.      Suggestive Identification Claim

18

Petitioner next asserts that he is entitled to habeas relief because prosecution witness Troynesha Henry's in-court identification was unreliable and tainted by an unduly suggestive identification procedure.   Petition at 3.   In particular, he claims that identification testimony is inherently unreliable, that Ms. Henry did not have a good opportunity to view the perpetrator, that her exposure to him at a pre-trial corporeal lineup and/or preliminary examination tainted her in-court identification, particularly because he has distinctive hair braids.   Pet. Br. at 18-20 (Dkt. 1).

Due process protects a criminal defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. Moore v. Illinois, 434 U.S. 220, 227 (1977).   A conviction based on identification testimony following a pre-trial identification violates due process when the pre-trial procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."   Simmons v. United States, 390 U.S. 377, 384 (1968).   If a witness is exposed to an unduly suggestive pre-trial identification procedure, the witness's in-court identification must be suppressed unless the identification has an independent origin untainted by the suggestive pre-trial procedure.   See United States v. Wade, 388 U.S. 218, 241 (1967).

Applying Supreme Court precedent, the United States Court of Appeals for the Sixth Circuit follows a two-step analysis in determining whether an identification is admissible. United States v. Crozier, 259 F.3d 503, 510 (6th Cir. 2001) (citation omitted).   A court must first determine whether the identification procedure was suggestive.   Id.   If the court finds that the procedure was suggestive, then it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible.   Id.   To determine reliability, a court considers five factors:   "(1) the opportunity of the witness to view the

19

perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification."   Id. (citation omitted).   "Against these factors is to be weighed the corrupting effect of the suggestive identification itself."   Id. (citation and quotation marks omitted).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  If a defendant meets this burden, then the prosecutor must demonstrate that the identification was independently reliable.  Wade, 388 U.S. at 240 n. 31.   As long as there is not a substantial likelihood of misidentification, it is for the jury or fact-finder to determine the ultimate weight to be given to the identification.   United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992).

In this case, Petitioner challenges the reliability of Ms. Henry's in-court identification, but cites no impermissibly suggestive pretrial identification procedure that tainted that identification. Although Petitioner claims that his braids are distinctive, he does not allege that the other men in the lineup did not have braids or other facts to show that the corporeal lineup was improper.   The fact that Ms. Henry did not identify him (or anyone else) in the lineup suggests that the lineup was not impermissibly suggestive.

Petitioner seems to argue that because Ms. Henry could not identify him at the pre-trial lineup, her in-court identification was tainted by his mere presence at that lineup and/or the preliminary examination.   In Perry v. New Hampshire, _ U.S. _, 132 S. Ct. 716, 720-721 (2012), however, the Supreme Court held that the Due Process Clause does not require preliminary judicial inquiry into the reliability of an eyewitness identification unless the identification was

procured under unnecessarily suggestive circumstances arranged by law enforcement officers. In the absence of official misconduct, the reliability of eyewitness identification is a matter for the jury to determine.   The Court explained:

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

132 S. Ct. at 721.

The record indicates that Ms. Henry made her identification based upon her recollection of the incident and her observation of Petitioner in court.   Trial Tr., 10/13/04, at 12-13 (Dkt. 9-5). Furthermore, although she saw Petitioner at the pre-trial lineup, she did not identify him.   Trial Tr., 10/14/04, at 40 (Dkt. 9-6).   While in-court identifications "involve some element of suggestion," they do not require a pre-trial determination of admissibility.   Id. at 727.   Petitioner has not shown that the identification resulted from unnecessarily suggestive circumstances arranged by law enforcement.   Consequently, under Perry, the question of the reliability of Ms. Henry's in-court identification was for the jury to decide.   Petitioner had sufficient opportunity to challenge the identification at trial.   He has failed to establish a constitutional violation.   Habeas relief is not warranted on this claim.

### 4.   Prosecutorial Misconduct Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the credibility of prosecution witnesses and by denigrating the defense.   Petition at 4-5.

The United States Supreme Court has stated that prosecutors must "refrain from improper

methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935).   To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly); Parker v. Matthews, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that Donnelly/Darden is the proper standard).

Petitioner first asserts that the prosecutor improperly vouched for prosecution witnesses during closing arguments by stating:   "They're not that sophisticated they're not desperate and they're not lying.  They didn't even have time to get their stuff together.  And you've heard testimony that they've been in foster care."  Trial Tr., 10/18/04, at 17 (Dkt. 9-7).   Petitioner also cites the following rebuttal argument:   "They know what they saw and they're not blind they know they're not lying and that's just another smoke screen."  Id. at 53.

It is well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility.  United States v. Young, 470 U.S. 1, 17-19 (1985); Hodge v. Hurley, 426 F.3d 368, 378 (6th Cir. 2005).   Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant, thereby infringing upon the defendant's right to be judged solely based upon the evidence presented, and because the prosecutor's opinion carries with it "the imprimatur of the Government" and may induce the jury to trust the Government's judgment rather than its own.  Young, 470 U.S. at 18-19; see also Cristini v. McKee, 526 F.3d 888, 901 (6th Cir. 2008).

The prosecutor in this case did not improperly vouch for the credibility of prosecution witnesses.   Rather, the prosecutor argued that those witnesses should be believed based upon the

22

substance of their testimony, their demeanor, their lack of motivation to lie, and the other evidence presented at trial.   A prosecutor may argue reasonable inferences from the evidence, Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief.   See Portuondo v. Agard, 529 U.S. 61, 69 (2000).   The prosecutor did not imply that she had personal knowledge or undisclosed evidence of guilt. See Cristini, 526 F.3d at 902 ("Although the prosecutor called these witnesses 'liars,' this argument that they were lying was based on evidence in the record, and was not framed in such a way that would suggest the prosecutor knew of any outside evidence.").   Petitioner has failed to show that the prosecutor's comments were improper or that they deprived him of a fundamentally fair trial.

Petitioner next asserts that the prosecutor denigrated the defense during closing arguments by using the term "smoke screen" and by stating that the alibi witness's testimony was "ridiculous."   It is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel.   United States v. Collins, 78 F.3d 1021, 1040 (6th Cir. 1996).   Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," Young, 470 U.S. at 9, or "argue that counsel is attempting to mislead the jury."   West v. Bell, 550 F.3d 542, 565 (6th Cir. 2008).   Prosecutors may, however, highlight inconsistencies or inadequacies in the defense, Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005), point out the lack of evidence supporting the defense theory, United States v. Forrest, 402 F.3d 678, 686 (6th Cir. 2005), and argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief.   Portuondo, 529 U.S. at 69; Cristini, 526 F.3d at 901-902.   Moreover, a prosecutor's description of a defense argument as a red herring, a smoke screen, or a distraction is not per se improper.   See United States v. Bernard, 299 F.3d 467, 487-488 (5th Cir. 2002); United States v. Rivera, 971 F.2d 876, 883 (2d Cir. 1992).

23

In this case, the prosecutor's comments were based upon the evidence and the testimony presented at trial.   While the prosecutor's language may have been strong or colorful at times, it was not inappropriate.   The prosecutor did not improperly denigrate defense counsel nor attack counsel's integrity.   Rather, the prosecutor criticized the defense theory and defense counsel's characterization of the evidence presented at trial.   The prosecutor also argued from the facts that the defense case was not worthy of belief.   Petitioner has failed to show that the prosecutor's remarks were improper or that they denied him a fair trial.

Furthermore, to the extent that any of the prosecutor's remarks were improper, they were not pervasive or misleading so as to render the trial fundamentally unfair.   See Young, 470 U.S. at 11 ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").   Any potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' comments were not evidence, and directed them not to let sympathy or prejudice influence their decision.   See Knapp v. White, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).   Jurors are presumed to follow the court's instructions.   See United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").   Petitioner has failed to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.   Habeas relief is not warranted on this claim.

### 5.        Ineffective Assistance of Trial Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to request a competency hearing, for failing to request an in-court lineup, for failing to seek appointment of a witness identification expert, and for failing to object to

24

improper prosecutorial comments.   Petition at 9-11.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.   First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.   Strickland, 466 U.S. at 687.   Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.   Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.   Id.

As to the performance prong, a petitioner must identify acts or omissions that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.   Id. at 690.   The reviewing court's scrutiny of counsel's performance is highly deferential.   Id. at 689.   Counsel is strongly presumed to have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   Id. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.   Id. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Id. at 694.   A reasonable probability is one that is "sufficient to undermine confidence in the outcome."   Id.    "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective

25

assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.   "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."   <u>Harrington</u>, 131 S. Ct. at 788 (citations omitted).   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard."   <u>Id.</u> at 788.

Petitioner first asserts that trial counsel was ineffective for failing to request a competency hearing.   Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary.   <u>See</u> <u>Wiggins</u>, 539 U.S. at 522-23; <u>Strickland</u>, 466 U.S. at 691. Petitioner, however, has not established that counsel's performance was deficient.   Petitioner admits that counsel visited him in the mental health unit of the Wayne County Jail and that they discussed his case.   Petition at 9.   Having consulted with Petitioner, counsel may have reasonably determined that he was competent and that requesting a competency hearing would have been futile. Counsel cannot be deemed ineffective for failing to make a futile motion.   <u>See</u> <u>United States v. Steverson</u>, 230 F.3d 221, 225 (6th Cir. 2000).   Petitioner has presented no evidence to overcome the strong presumption that the defense counsel made sound strategic decisions.   Furthermore, Petitioner has not shown that he was prejudiced by counsel's conduct as he has failed to demonstrate that he was incompetent to stand trial.

Petitioner next asserts that trial counsel was ineffective for failing to request an in-court lineup.   Under Michigan law, a trial court has discretion to grant a defendant's request for a line-up, but a defendant is not entitled to such a line-up as a matter of right.   <u>People v. Buchanan</u>,

26

309 N.W.2d 691, 693 (1981).   In this case, counsel may have reasonably decided that requesting an in-court lineup was not a good trial strategy.   While Troynesha Henry did not identify Petitioner at the pre-trial lineup, the police testified that other witnesses had identified Petitioner as the perpetrator.   Trial Transcript, 10/14/04, at 40-45 (Dkt. 9-6). Consequently, an in-court lineup was a risky proposition – and potentially devastating to the defense if Ms. Henry identified Petitioner.   Counsel may have thus decided not to request an in-court lineup and to instead challenge any identification by Ms. Henry through cross-examination.   The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.   See, e.g., Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) ("[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken.") (citation and quotation marks omitted).   Petitioner has failed to establish that counsel was ineffective in this regard.

Petitioner also asserts that trial counsel was ineffective for failing to seek appointment of a witness identification expert.   Petitioner's claim is speculative.   Although Petitioner asserts that eyewitness testimony is inherently unreliable, he fails to offer expert testimony in support of his claim or otherwise demonstrate that expert testimony would have made a difference at trial.   As noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.   See, e.g., Workman, 178 F.3d at 771; see also Malcum v. Burt, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) (to present a viable ineffective assistance of counsel claim based upon the failure to call a witness, a petitioner must make an affirmative showing as to the witness's identity and availability and the substance of his or her testimony, and must show that the testimony would have likely affected the outcome).

Moreover, the Constitution does not require defense counsel to pursue every possible trial

strategy.  Engle v. Isaac, 456 U.S. 107, 134 (1982).  "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." Perkins v. McKee, 411 F. App'x. 822, 833 (6th Cir. 2011).   The record in this case shows that counsel cross-examined the prosecution witnesses about their versions of events and their identifications of Petitioner, questioned police officers about those issues and the lack of physical evidence linking Petitioner to the crime, and presented an alibi witness.  Such strategy was reasonable – and counsel's strategic decision is "due a heavy measure of deference."  Cullen, 131 S. Ct. at 1408.  Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct in not seeking an identification expert.   See, e.g., Forensic v. Birkett, 501 F.3d 469, 483-84 (6th Cir. 2007) (denying relief on similar claim).   He has thus failed to establish that counsel was ineffective.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct.   Given the Court's determination that the prosecutor did not engage in misconduct, Petitioner cannot establish that counsel was deficient or that he was prejudiced by counsel's conduct as required under the Strickland standard.   As noted, defense counsel cannot be deemed ineffective for failing to make a futile objection.   See Steverson, 230 F.3d at 225.   Habeas relief is not warranted on this claim.

### 6.    Cumulative Error Claim

Petitioner next asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial.   Petition at 20.   Petitioner cannot establish that he is entitled to federal habeas relief based upon cumulative error because he has failed to demonstrate an underlying constitutional violation.   See Gillard v. Mitchell, 445 F.3d 883, 898 (6th Cir. 2006).

Moreover, the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is therefore not warranted on this claim.

### D.    Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal in the state courts. Petition at 21. Petitioner is not entitled to relief on any such claim. As explained supra, he has failed to establish that appellate counsel was ineffective under the Strickland standard – and the defaulted claims lack merit. Appellate counsel cannot be deemed ineffective for failing to raise non-meritorious issues. Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010). Habeas relief is not warranted on this claim.

### E.    Evidentiary Hearing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in denying his request for an evidentiary hearing and/or that he is entitled to an evidentiary hearing on habeas review. Petition at 22. To the extent that Petitioner claims that the state courts violated state law in denying him an evidentiary hearing, he is not entitled to relief. See Hayes v. Prelesnik, 193 F. App'x 577, 584 (6th Cir. 2006) (citation omitted). A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review. This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). There is also no clearly-established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on state post-conviction review to develop issues. See Hayes, 193 F. App'x at 584; see also Hall v. Berghuis, No. 07-12163, 2009 WL 2244793, at

*9 (E.D. Mich. July 27, 2009) (denying habeas relief on similar claim).   Habeas relief is not

warranted on this claim.

## V.      CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims contained his petition.   Accordingly, the Court denies and dismisses with

prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must

issue.   See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).   When a court denies relief on the merits, the substantial showing

threshold is met if the petitioner demonstrates that reasonable jurists would find the court's

assessment of the claim debatable or wrong.   See Slack v. McDaniel, 529 U.S. 473, 484-85

(2000).   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further."   Miller-El v.

Cockrell, 537 U.S. 322, 327 (2003).   In applying this standard, a court may not conduct a full

merits review, but must limit its examination to a threshold inquiry into the underlying merits.

Id. at 336-37.   When a court denies relief on procedural grounds without addressing the merits, a

certificate of appealability should issue if it is shown that jurists of reason would find it debatable

whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of

reason would find it debatable whether the court was correct in its procedural ruling.   Slack, 529

U.S. at 484-85.

Having conducted the requisite review, the Court concludes that Petitioner has failed to

make a substantial showing of the denial of a constitutional right as to his habeas claims and that

reasonable jurists could not debate the correctness of the Court's procedural rulings. Accordingly, the Court denies a certificate of appealability.  The Court also denies leave to proceed <u>in forma pauperis</u> on appeal because an appeal cannot be taken in good faith.   <u>See</u> Fed. R. App. P. 24(a).   This case is closed.

   SO ORDERED.

Dated:  March 25, 2013      s/Mark A. Goldsmith    
    Flint, Michigan       MARK A. GOLDSMITH
               United States District Judge

<u>**CERTIFICATE OF SERVICE**</u>

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2013.

            s/Deborah J. Goltz    
            DEBORAH J. GOLTZ
            Case Manager