UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL ANTHONY DAVIS, #514719,

                Petitioner,

                                       Case No. 10-CV-11240

v.

                                       HON. MARK A. GOLDSMITH

NICK LUDWICK,

                Respondent.

_____/

**OPINION AND ORDER
(1) DENYING HABEAS RELIEF AS TO PORTIONS OF PETITIONER'S THIRD,
FOURTH, AND FIFTH CLAIMS, AND HIS SIXTH CLAIM; (2) DENYING A
CERTIFICATE OF APPEALABILITY; AND (3) DENYING LEAVE TO PROCEED IN
FORMA PAUPERIS ON APPEAL**

### I.  INTRODUCTION

This matter is presently before the Court on reconsideration of the following claims:  (i) the portion of Petitioner's third habeas claim alleging that he was denied the right to counsel when an in-custody photographic lineup was conducted; (ii) the portion of Petitioner's fourth habeas claim alleging that the prosecutor improperly used hearsay evidence as substantive evidence of guilt and argued facts not in evidence; (iii) the portion of Petitioner's fifth habeas claim alleging that trial counsel was ineffective for failing to present credible alibi witnesses, for failing to seek suppression of witness identifications, failing to impeach a witness, failing to investigate witnesses, and failing to object to the jury instructions; and (iv) Petitioner's sixth habeas claim challenging the sufficiency of the evidence.  Respondent contends that the claims are procedurally defaulted and/or lack merit.

The Court has reviewed the supplemental materials and, for the reasons set forth below, the Court finds that the foregoing claims are procedurally defaulted and lack merit.  Therefore,

1

the Court denies habeas relief as to those claims.  The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.  BACKGROUND

The Court incorporates by reference the statement of facts and procedural history set forth in its prior opinion and order.  See 3/25/13 Op. & Order (Dkt. 16).  The Court notes that the foregoing claims were first raised by Petitioner in his supplemental motion for relief from judgment before the state trial court (Dkts. 25-1, 25-2).  The trial court denied relief on the supplemental claims finding that they were "wholly without merit" and ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions or in his prior motion.  See People v. Davis, No. 04-006941-01 (Wayne Cnty. Cir. Ct. Oct. 3, 2008) (Dkt. 9-11).  The Michigan Court of Appeals and the Michigan Supreme Court both denied leave to appeal pursuant to Michigan Court Rule 6.508(D) (Dkts. 9-14, 9-16).

## III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted).  A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. (citation omitted).  Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  See Wetzel v. Lambert,

132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

## IV. ANALYSIS

### A. Procedural Default

Respondent contends, in part, that the foregoing claims are barred by procedural default

because Petitioner first raised the issues in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).  Resp't Answer (Dkt. 24).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is enforced by the state courts, and the procedural rule is "independent and adequate state ground to foreclose review of the federal constitutional claim." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006); see also Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005) (same).  The last explained state-court judgment should be used to make this determination.  Ylst v. Nunnemaker, 501 U.S. 797, 803-805 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  Id. at 803 (holding that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground," and that "where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, [the court] will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

Petitioner first presented the foregoing claims in his supplemental motion for relief from judgment.  The Michigan Supreme Court, the last state court to rule on the matter, denied leave to appeal pursuant to Michigan Court Rule 6.508(D).  That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  See Mich. Ct.

R. 6.508(D)(3).  The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  See Guilmette v. Howes, 624 F.3d 286, 291-292 (6th Cir. 2010).  Consequently, under Guilmette, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.  Id. at 302.

In this case, the state trial court denied relief on procedural grounds by finding that the claims were "wholly without merit" and ruling that Petitioner had "failed to demonstrate 'good cause'" and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions or in his prior motion.  See People v. Davis, No. 04-006941-01, at 1-2 (cm/ecf pages) (Wayne Cnty. Cir. Ct. Oct. 3, 2008) (Dkt. 9-11).  The state court clearly relied upon a procedural default to deny Petitioner relief on his claims.  Accordingly, the Court finds that the claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750-751 (1991); Nields v. Bradshaw, 482 F.3d 442 (6th Cir. 2007) (same).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default in failing to raise the claims on direct appeal of his convictions.  In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient and . . . that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S.

668, 687 (1984); O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994) (same).  In determining

whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the
> circumstances, the identified acts or omissions were outside the
> wide range of professionally competent assistance. . . .  At the
> same time, the court should recognize that counsel is strongly
> presumed to have rendered adequate assistance and made all
> significant decisions in the exercise of reasonable professional
> judgment.

Strickland, 466 U.S. at 690.  Thus, "[j]udicial scrutiny of counsel's performance must be highly

deferential."  Id. at 689.  Further, the defense is prejudiced only if "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  Id. at 694.

It is well established that a criminal defendant does not have a constitutional right to have

appellate counsel raise every nonfrivolous issue on appeal.  Jones v. Barnes, 463 U.S. 745, 751

(1983).  As the Supreme Court explained,

> [f]or judges to second-guess reasonable professional judgments
> and impose on appointed counsel a duty to raise every "colorable"
> claim suggested by a client would disserve the very goal of
> vigorous and effective advocacy . . . .  Nothing in the Constitution
> or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d

56, 59 (6th Cir. 1990), cert. denied, 498 U.S. 1002 (1990).  In fact, "the hallmark of effective

appellate advocacy" is the "process of winnowing out weaker arguments on appeal and focusing

on those more likely to prevail."  Smith v. Murray, 477 U.S. 527, 536 (1986) (quotation marks

omitted).  "Generally, only when ignored issues are clearly stronger than those presented, will

the presumption of effective assistance of appellate counsel be overcome."  Monzo v. Edwards,

7

281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as "an issue which was obvious from the trial record and . . . would have resulted in a reversal on appeal.  Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (quotation marks and citation omitted).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.  None of the claims is "dead-bang winner," particularly in light of the eyewitness testimony establishing Petitioner's guilt presented at trial.  Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct — or demonstrate prejudice to excuse this procedural default — because the Court finds that the defaulted claims lack merit for the reasons stated below.

Petitioner cites to an alleged failure by the trial court (or possibly the post office or the prison) to inform him of the decision denying his initial motion for relief from judgment as cause to excuse his failure to raise the foregoing claims in his prior motion.  Pet'r Br. at 4 (Dkt. 34). While such a lack of notice could presumably justify a late appeal or request for reconsideration as to the trial court's denial of his initial motion for relief from judgment, it does not excuse Petitioner's failure to include his supplemental claims in his initial motion for relief from judgment.  Thus, Petitioner fails to establish cause to excuse this default.  The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default.  See Smith, 477 U.S. at 533.  Nonetheless, even if Petitioner can establish cause, the Court finds that Petitioner cannot establish prejudice because the defaulted claims lack merit for the reasons stated below.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice has

occurred.  The miscarriage of justice exception requires a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray v. Carrier, 477 U.S. 478, 496 (1986).  To be credible, such a claim of actual innocence requires a "petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Moreover, "actual innocence means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998) (quotation marks omitted).  Petitioner makes no such showing, and his conclusory allegations of innocence are insufficient.  Therefore, the Court concludes that the foregoing claims are barred by procedural default and do not warrant federal habeas relief.

### B.  Merits of Defaulted Claims

#### 1.  Photographic Array Claim

Petitioner asserts that he is entitled to habeas relief because he was denied his right to counsel during a photographic array conducted while he was in police custody.  It appears from the record that the police conducted a photographic array with witness Dana Henry after Petitioner refused to participate in a corporeal lineup.  Dana Henry identified Petitioner in that array.  See 10/14/04 Trial Tr. at 40-45, 83-84 (Dkt. 9-6).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  However, the Sixth Amendment does not grant a defendant the right to counsel at a photographic array conducted by the government for the purpose of allowing a witness to attempt the identification of the offender, even when the array is conducted after an arrest, or after an indictment or charges have been returned.  United States v. Ash, 413 U.S. 300, 321 (1973); see also Van v. Jones, 475 F.3d 292, 311 (6th Cir. 2007) (holding that "a

photographic display cannot fairly be considered a 'critical stage' of the prosecution"); Hanks v. Jackson, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000) (holding that there is no Sixth Amendment right to counsel during a photographic display).[1]  Thus, the mere fact that counsel was not present during the photographic array does not render the witness's identification and subsequent testimony unconstitutional as a matter of federal law.  Furthermore, a criminal defendant has no federal constitutional right to a live or corporeal lineup.  Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); Payne v. Smith, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (citing cases) (same).  As such, Petitioner fails to establish a violation of his federal constitutional rights.  Therefore, the Court concludes that habeas relief is not warranted on this claim.

### 2.  Prosecutorial Misconduct Claims

Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by using hearsay as substantive evidence of guilt and arguing facts not in evidence and/or vouching for prosecution witnesses.  The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  Berger v. United States, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v.

---

[1]Michigan law provides that a photographic identification in the absence of counsel when a defendant is in custody, absent exigent circumstance, is inappropriate.  See People v. Kurylczyk, 505 N.W.2d 528, 533-534 (Mich. 1993).  However, whether Petitioner had a right to counsel under state law is irrelevant because "federal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) (reemphasizing "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly); Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (confirming that Donnelly/Darden is the proper standard).

Petitioner first asserts that the prosecutor engaged in misconduct by eliciting hearsay and using it as substantive evidence of guilt. The record indicates that defense counsel asked a police witness whether she had checked records to determine whether Petitioner had previously been charged and prosecuted for a homicide. The witness responded that Petitioner had not been charged or prosecuted for any other homicide. In response, the prosecutor was allowed to ask the witness whether Petitioner was a suspect in another homicide. The witness responded that Petitioner was a suspect in an ongoing homicide investigation. See 10/14/04 Trial Tr. at 68-78, 84-85.

Petitioner fails to show that the prosecutor erred or that his trial was rendered fundamentally unfair. The prosecutor elicited the testimony about Petitioner being the subject of another investigation in response to defense counsel's elicitation of testimony that Petitioner did not have a prior record of being charged or prosecuted for a homicide. The prosecutor's goal was to avoid misleading the jury, and the prosecutor did not argue this testimony as substantive evidence of guilt. It is well settled that a prosecutor's good-faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. Cristini v. McKee, 526 F.3d 888, 900 (6th Cir. 2008) (holding that "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings"), cert. denied, 556 U.S. 1187 (2009). Petitioner fails to establish that the prosecutor acted in bad faith or improperly relied upon hearsay as substantive evidence of guilt.

Petitioner also asserts that the prosecutor engaged in misconduct by arguing facts not in

evidence and/or vouching for prosecution witnesses.  Specifically, he alleges that the prosecutor argued facts not in evidence by claiming that there was a "pure identification" of Petitioner as the perpetrator.  Although prosecutors must refrain from asserting facts never admitted in evidence. Washington v. Hofbauer, 228 F.3d 689, 700 (6th Cir. 2000), prosecutors may "forcefully assert reasonable inferences from the evidence" presented at trial.  Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005).

That is precisely what occurred in this case.  The prosecutor argued from the testimony and demeanor of the witnesses that the jury should find the witnesses' identifications of Petitioner as the perpetrator to be credible.  The prosecutor's argument, while forceful, did not rely upon facts not in evidence or otherwise mislead the jury.

Petitioner also alleges that the prosecutor improperly vouched for Troynesha Henry.  It is improper for a prosecutor to express his or her own personal opinions about the credibility of a witness.  United States v. Young, 470 U.S. 1, 9-10 (1985); Hodge v. Hurley, 426 F.3d 368, 378 (6th Cir. 2005) ("It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying.").  Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury that supports the charges against the defendant, thereby infringing upon the defendant's right to be judged solely based upon the evidence presented, and because "the prosecutor's opinion carries with it the imprimatur of the Government," which may induce the jury to trust the government's judgment rather than its own.  Young, 470 U.S. at 18-19; Cristini, 526 F.3d at 901 (same).

In this case, however, the prosecutor neither expressed a personal belief that Henry was telling the truth nor implied special knowledge about her credibility. Rather, the prosecutor

12

argued from the facts that her testimony should be believed.  A prosecutor may argue reasonable inferences from the evidence, <u>Bates</u>, 402 F.3d at 646, and may argue from the facts that a witness is or is not worthy of belief.  <u>Portuondo v. Agard</u>, 529 U.S. 61, 69 (2000).  The prosecutor did not imply that she had personal knowledge or undisclosed evidence of guilt. Petitioner fails to show that the prosecutor's comments were improper or that they deprived him of a fundamentally fair trial.

Lastly, to the extent that any of the prosecutor's actions could be seen as improper, they were not so pervasive or misleading as to render the trial fundamentally unfair.  Additionally, any potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' comments were not evidence, and directed them to decide the case based solely on the evidence.  <u>Hamblin v. Mitchell</u>, 354 F.3d 482, 495 (6th Cir. 2003), <u>cert.</u> <u>denied</u>, 543 U.S. 925 (2004); <u>Knapp v. White</u>, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003) (concluding that habeas relief was not warranted where, despite the prosecutor's forceful arguments, the trial court instructed the jury "that they must not let prejudice or sympathy influence their decision"), <u>aff'd</u>, 136 F. App'x 853 (6th Cir. 2005).  Jurors are presumed to follow the court's instructions.  <u>Penry v. Johnson</u>, 532 U.S. 782, 799 (2001); <u>United States v. Powell</u>, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  As such, Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. Therefore, the Court concludes that habeas relief is not warranted on this claim.

### 3.  Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to present additional alibi witnesses, for failing to seek suppression of

witness identifications, for failing to impeach a witness, for failing to investigate witnesses, and for failing to object to the jury instructions.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance."  Id. at 689.  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Id. at 689.

Second, the defendant must show that such performance prejudiced his defense.  Id. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'"  Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792).  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance.  See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington, 131 S. Ct. at 788 (quotation marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788.

Petitioner first asserts that trial counsel was ineffective for failing to present additional alibi witnesses — his friends Tommy Holmes and Julia Sanders. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. Wiggins v. Smith, 539 U.S. 510, 522-523 (2003); Stewart v. Wolfenbarger, 468 F.3d 338, 354, 356 (6th Cir. 2007) (same). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005). That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. Roe v. Flores–Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic; but whether they were reasonable."). The failure to call a known alibi witness can constitute ineffective assistance of counsel. Bigelow v. Williams, 367 F.3d 562, 570 (6th Cir. 2004). Counsel, however, is not required to call a witness whose credibility is questionable. Thurmond v. Carlton, 489 F. App'x 834, 840 (6th Cir. 2012). The failure to call witnesses or present other evidence constitutes

15

ineffective assistance of counsel only when it deprives a defendant of a substantial defense. Chegwidden v. Kapture, 92 F. App'x 309, 311 (6th Cir. 2004).

In this case, counsel raised an alibi defense at trial and presented testimony from Tomika Holmes in support of that defense. Tomika Holmes testified that Petitioner was at her home in Taylor, Michigan, from about 2:30 in the afternoon on May 11, 2004 until she went to bed around 2:30 or 3:00 a.m. on May 12, 2004. She did not know who he was with after she went to bed. When she woke up at 11:00 a.m., he was on the couch playing a video game with her brother, Tommy Holmes. The record indicates that counsel investigated Tommy Holmes and Julia Sanders as potential witnesses, but chose not to call them at trial. Counsel's decision is entitled to deference on habeas review — and counsel's choice did not deprive Petitioner of an alibi defense at trial.

Moreover, counsel's decision not to call the additional witnesses was reasonable. Given Tomika's testimony, counsel may have reasonably decided not to call Tommy Holmes as a witness because his testimony about when he was at the house with Petitioner was potentially inconsistent with his sister's testimony. See 10/4/07 Holmes's Affidavit at 1-2 (cm/ecf pages) (Dkt. 1-6). Counsel may have also reasonably decided not to call Tommy Holmes as a witness because he had been convicted of several felonies and was incarcerated at the time of Petitioner's trial. See Holmes's Offender Tracking Info. Sys. Profile (Dkt. 25-3).

Furthermore, counsel may have reasonably decided not to call Sanders because she could not provide an alibi for Petitioner for the time of the shooting. While she claimed to have dropped off Petitioner at Tomika Holmes's residence during the afternoon on May 11, 2004, and to have picked him up there around noon on May 12, 2004, she could not account for Petitioner's whereabouts at the time of the shooting during the early morning hours on May 12, 2004. See

10/10/07 Sanders's Affidavit at 32-33 (cm/ecf pages) (Dkt. 1-5). Given that Sanders could not provide Petitioner with an "air-tight" alibi defense, counsel was not ineffective for deciding not to call her to testify at trial. See Moore v. Parker, 425 F.3d 250, 253-254 (6th Cir. 2005).

As such, Petitioner has not overcome the presumption that counsel's conduct was sound trial strategy. See Roush v. Burt, 313 F. App'x 754, 761 (6th Cir. 2008) (finding no reason to deem counsel ineffective for failing to call a witness where the record showed that counsel had investigated the witness). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) (holding that "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Counsel's conduct in this case was reasonable.

Petitioner also fails to demonstrate that he was prejudiced by counsel's decision not to call the additional witnesses at trial given the potential inconsistencies with Tommy Holmes's proposed testimony and the fact that Julia Sanders's proposed testimony did not cover the time when the shooting occurred. Additionally, three witnesses who were somewhat familiar with Petitioner positively identified him as the perpetrator of the crime. See Ballinger v. Prelesnik, 709 F.3d 558, 563 (6th Cir. 2013) (finding that the state court's resolution of the petitioner's ineffective-assistance-of-counsel claim was reasonable given the powerful testimony of two eyewitness, both of whom were familiar with the petitioner based on his presence in the neighborhood), cert. denied, 133 S. Ct. 2866 (2013). Therefore, the Court finds that Petitioner fails to establish that counsel was ineffective under the Strickland standard.

Petitioner next asserts that trial counsel was ineffective for failing to seek suppression of the witnesses' identifications. Counsel, however, may have reasonably decided to challenge

those identifications at trial — and the record indicates that counsel did so.  The decision to attack the credibility of the identifications through cross-examination, rather than to seek suppression of the identifications, was a reasonable trial strategy which defeats Petitioner's claim.  See, e.g., Killebrew v. Endicott, 992 F.2d 660, 665 (7th Cir. 1993); Johnson v. Warren, 344 F. Supp. 2d 1081 (E.D. Mich. 2004) ("Counsel's decision to attack the credibility of Benedict's identification of petitioner through extensive cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats the ineffective assistance of counsel claim.").  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  Moss, 286 F.3d at 859.

Moreover, Petitioner fails to establish that any such suppression motion would have been successful.  Conclusory allegations are insufficient to warrant federal habeas relief.  Cross v. Stovall, 238 F. App'x 32, 39-40 (6th Cir. 2007) (holding that the petitioner's "conclusory assertions about actual prejudice . . . fall far short of showing actual prejudice"); Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (holding that the petitioner's conclusory allegations of ineffective assistance of counsel did not justify habeas relief).  Moreover, counsel cannot be deemed deficient for failing to make a futile or meritless motion.  See Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").  Therefore, the Court finds that Petitioner fails to establish that counsel was ineffective for not seeking the suppression of witnesses' identifications.

Petitioner next asserts that trial counsel was ineffective for failing to impeach witness Dana Henry.  This claim, however, is belied by the record which shows that counsel extensively questioned Henry about his version of events and challenged his credibility.  See 10/13/04 Trial Tr. at 123-136 (Dkt. 9-5).  Moreover, the cross-examination of witnesses is generally a matter of

18

trial strategy left to the professional discretion of counsel.  See Jackson v. Bradshaw, 681 F.3d 753, 765 (6th Cir. 2012) (stating that "[m]ost cross-examinations can be improved but if that were the standard of constitutional effectiveness, few would be the counsel whose performance pass muster").  Petitioner fails to overcome the presumption that counsel's conduct in this regard was sound trial strategy.  Petitioner also fails to show what more counsel could have done which would have affected the outcome or that he was otherwise prejudiced by counsel's conduct.  Petitioner fails to establish that counsel was ineffective.

Petitioner next asserts that trial counsel was ineffective for failing to investigate or interview potential witnesses.  Petitioner, however, fails to provide affidavits or other evidence to show that counsel failed to investigate the individuals and/or that any information they would have provided would have benefitted his defense.   As noted, conclusory allegations are insufficient to justify habeas relief.  Cross, 238 F. App'x at 39-40; Workman, 178 F.3d at 771.  Petitioner fails to establish that counsel was ineffective.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to object to the lack of a prior inconsistent statement instruction and/or for not requesting other possible curative instructions.  The record indicates that counsel was aware of the possibility of seeking additional instructions but chose to "let it go" and proceed with the instructions as given.  10/18/04 Trial Tr. at 71-72 (Dkt. 9-7).  Counsel may have reasonably decided to forego additional jury instructions in order to avoid drawing further attention to matters that could have been prejudicial to the defense, to instead discuss such matters during closing argument, or because he believed the instructions as given were sufficient to inform the jury of the pertinent legal issues.  Petitioner has not overcome the presumption that counsel's conduct was sound trial strategy, nor has he shown that he was prejudiced by counsel's conduct.  The jury instructions were sufficient to

inform the jury of the elements of the charged offenses, the proper consideration of the evidence, and potential defenses.   Petitioner fails to establish that counsel was ineffective under the Strickland standard.

Accordingly, the Court concludes that habeas relief is not warranted on these claims.

### 4.  Insufficient Evidence Claim

Finally, Petitioner asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions.   Specifically, he asserts that there was insufficient evidence of premeditation and deliberation to support his first-degree murder conviction.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  The standard of review for a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).   "The Jackson standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quotation marks omitted).  A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002), cert. denied, 537 U.S. 1004 (2002).   Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial, and then the state court on appellate review — as long as those determinations are reasonable. Brown v. Konteh, 567 F.3d

191, 205 (6th Cir. 2009), cert. denied, 558 U.S. 1114 (2010).  "[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from the evidence admitted at trial."  Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam).  "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court."  Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).  Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  Id. at 788-789.

Under Michigan law, first-degree premeditated murder requires proof "that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate."  See People v. Kelly, 588 N.W.2d 480, 488 (Mich. Ct. App. 1998); Mich. Comp. Laws § 750.316. Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide."  People v. Abraham, 599 N.W.2d 736, 745 (Mich. Ct. App. 1999) (quotation marks omitted).  "[S]ome time span between the initial homicidal intent and [the] ultimate action is necessary to establish premeditation and deliberation," People v. Gonzalez, 664 N.W.2d 159 (Mich. 2003) (brackets and quotation marks omitted), but the time required need only be long enough "to allow the defendant to take a second look."  People v. Schollaert, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992).  An interval of a few seconds can be sufficient to create a jury question on the issue of premeditation.  See People v. Tilley, 273 N.W.2d 471, 473-474 (Mich. 1979).  Furthermore, premeditation and deliberation may be inferred from "the type of weapon used and the location of the wounds inflicted."  People v. Berry, 497 N.W.2d 202, 204 (Mich. Ct. App. 1993).  Use of a lethal weapon supports an inference of an intent to kill.  People v. Turner, 233 N.W.2d 617, 619 (Mich.

Ct. App. 1975).   Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, People v. Jolly, 502 N.W.2d 177, 180 (Mich. 1993), including the defendant's intent or state of mind.   People v. Dumas, 563 N.W.2d 31, 34 (Mich. 1997).

In this case, Petitioner's intent to kill, including premeditation and deliberation, was established by his retrieval and use of a deadly weapon, the fact that he shot the victim multiple times, his warning and words to witnesses at the time of the shooting, and his flight from the scene.   Petitioner had time to consider his actions and take a "second look" before shooting the victim.   The trial testimony provided ample evidence that Petitioner fired lethal shots at the victim and that he acted with premeditation and deliberation so as to support his first-degree murder conviction.

Petitioner challenges the inferences and credibility determinations made by the jury at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.   Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002) (noting that "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence"), cert. denied, 537 U.S. 1004 (2002); Walker v. Engle, 703 F.2d 959, 969–970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."), cert. denied, 464 U.S. 951 (1983).   The jury's verdict was reasonable.   The trial testimony, viewed in a light most favorable to the prosecution, established beyond a reasonable doubt that Petitioner shot and killed the victim, and that he possessed the requisite intent for first-degree murder.   Therefore,

the Court concludes that habeas relief is not warranted on this claim.

### C.  Certificate of Appealability and Leave to Appeal In Forma Pauperis

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude

23

either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  Id.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to the foregoing habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, a certificate of appealability is not warranted in this case. The Court also denies Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous.  See, e.g., Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002); Fed. R. App. P. 24(a).

## V.  CONCLUSION

For the reasons set forth above, the Court denies and dismisses with prejudice the petition for writ of habeas corpus on the foregoing claims, declines to issue a certificate of appealability, and denies Petitioner leave to appeal in forma pauperis.

SO ORDERED.


Dated:  February 27, 2015                    s/Mark A. Goldsmith
        Detroit, Michigan                    MARK A. GOLDSMITH
                                             United States District Judge



## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2015.

                                     s/Johnetta M. Curry-Williams
                                     Case Manager